**PENNSYLVANIA SCHOOL BOARDS ASSOCIATION, INC., Petitioner,**

v.

**PUBLIC SCHOOL EMPLOYEES' RETIREMENT SYSTEM and the Public School Employees' Retirement Board, Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 9, 2002.

Decided Aug. 12, 2002.

---

Michael I. Levin, Huntingdon Valley, for petitioner.

Charles K. Serine, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, LEAVITT, Judge, DOYLE, Senior Judge.

OPINION BY Judge LEAVITT.

The Pennsylvania School Boards Association (PSBA)[1] petitions for review of a Statement of Policy of the Public School Employees' Retirement System (PSERS). The Statement of Policy allows teachers[2]

---

1. PSBA is a non-profit corporation of the Commonwealth of Pennsylvania encompassing a voluntary association of local school districts and the members of the local school boards of those districts. PSBA renders assistance to local school districts. Its member school districts are required to make employer contributions to the state pension retirement system administered by the Public School Employees Retirement System under the provisions of the Public School Employ-

ees' Retirement Code, Subchapter B, 24 Pa. C.S. §§ 8321–8330.

2. Most employees of a public school are teachers, but the retirement system covers all employees. The employee most likely to have part-time service is the substitute teacher who subsequently obtains full-time employment. In this opinion, we use the term "teacher" and "employee" interchangeably; all teachers are public school employees but, of course,

to purchase credit for their part-time service rendered prior to their becoming members of PSERS, thereby increasing their pension benefits. Invoking this Court's original jurisdiction,[3] PSBA seeks declaratory and injunctive relief to prevent implementation of the Statement of Policy. For the reasons set forth below, we deny PSBA's request for relief.

## HISTORY OF THE CASE

Prior to 1975,[4] only full-time teachers were able to participate in the public school retirement system. The current Public School Employees' Retirement Code, 24 Pa.C.S. §§ 8101–8534 (Retirement Code), enacted in 1975, substantially revised the prior system with respect to part-time service. First, the Retirement Code mandated that all *salaried* teachers be enrolled as members of PSERS, regardless of the number of days or hours worked. Second, the Retirement Code mandated that all *per diem* teachers be enrolled, if their service exceeded 80 days or 500 hours in any fiscal year. By contrast, teachers whose service totaled less than 80 days or 500 hours remained ineligible for membership in the system.

Since 1975, public school employers have reported *per diem* service that exceeded 80 days or 500 hours. In 1992, PSERS adopted a statement of policy, entitled "Crediting Purchases of Service During a Non-qualifying Year," which clarified that service that did not meet 80 days or 500 hours was *not* to be reported.[5] Also consistently since 1975, PSERS's staff has counseled that service that did not pass the threshold of 80 days or 500 hours did not qualify the employee for membership, and, further, credit for this part-time school service could not be purchased should the employee became a member. In other words, membership in the system has been a pre-requisite to earning credit for part-time service.

In January of 1999, PSERS did an about-face on the issue of part-time service. Deciding that its prior position of nearly 25 years was erroneous, it adopted a Statement of Policy (1999 Policy)[6] to authorize members of PSERS to purchase credit for their pre-membership, part-time school service of less than 80 days or 500 hours in any fiscal year. Because the purchase is not mandatory but optional, the 1999 Policy clarified that the exercise of this option does not trigger an obligation in the public school employer to pay the employer share for that purchase. Finally, the 1999 Policy did not change the reporting requirements of public school employers for *per diem* service less than 80 days or 500 hours; unless or until the part-time teacher becomes a member of PSERS, this part-time service remains ir-

not all "employees" are engaged in the teaching profession.

3. This Court has jurisdiction over this matter pursuant to Section 761 of the Judicial Code, 42 Pa.C.S. § 761.

4. PSERS was established by statute in 1959 to serve as the pension retirement system for public school employees. *See* Public Schools Retirement Code of 1959, §§ 101–102 of the Act of June 1, 1959, P.L. 350, No. 77, 24 P.S. §§ 3101–3102. The 1959 statute was superceded by the Public School Employees' Retirement Code enacted on October 2, 1975, 24 Pa.C.S. §§ 8101–8535. The Pennsylvania Public School Employees' Retirement Board (Board) is the governing body of PSERS. 24 Pa.C.S. §§ 8501–8509. The Board was also named as a respondent, but it was removed by agreement of the parties. *See infra* footnote 7.

5. See Exhibit "B" of the Stipulation of Facts dated September 13, 2001.

6. See Exhibit "A" of the Stipulation of Facts dated September 13, 2001.

relevant to pension benefits and is not reportable.

On March 23, 1999, PSBA instituted litigation claiming that the 1999 Policy would financially burden its member school districts and would do so unlawfully because it is without support in the Retirement Code. It claimed the right to a declaratory judgment that the 1999 Policy is invalid as a matter of law and requested a permanent injunction against its enforcement.[7] The preliminary injunction request of PSBA was settled by an agreement that PSERS would stay the processing of any application for the purchase of part-time service until a decision on the merits was reached by this Court. Discovery was taken, and a Stipulation of Facts was filed on September 13, 2001. On September 19, 2001, PSERS filed an application for summary relief pursuant to Pa. R.A.P. 1532(b), and on November 12, 2001, PSBA filed a cross-application for summary relief.

The singular issue before us is whether Section 8303(c) of the Retirement Code, 24 Pa.C.S. § 8303(c), permits members of the system to purchase credit for their part-time school service of less than 80 days or 500 hours in any fiscal year. The resolution of this issue requires a close inspection of Section 8303(c) and related provisions in the Retirement Code.

## SECTION 8303(c) OF THE RETIREMENT CODE

■ The 1999 Policy[8] sets forth PSERS's interpretation of the Retirement Code; it is not a regulation with the force and effect of law. It functions as a notice[9] to the members, their employers and other interested persons that PSERS will now accept applications from members who wish to purchase credit for part-time service rendered pre-membership. PSERS has received numerous requests for applications, and we decide here whether the Retirement Code permits PSERS to accept and process these applications.

---

**7.** The Board filed Preliminary Objections to the Petition on April 6, 1999 to eliminate PSERS as a party and to strike those portions of the Petition claiming a fiduciary duty owed to PSBA by the Board. By opinion and order dated May 17, 2000 this Court denied the motion to delete PSERS as a party and, on the second issue presented, ruled that the PSBA did not have standing to assert that the Board owed PSBA a fiduciary duty under the Retirement Code. *Pennsylvania School Boards Association, Inc. v. Public School Employees' Retirement System, and the Public School Employees' Retirement Board*, 751 A.2d 1237 (Pa. Cmwlth.2000). The issue of preliminary injunctive relief was resolved by agreement of the parties, approved by order of this Court dated April 20, 1999. The parties also agreed to amend the caption of this case to reflect that PSERS is the only respondent. The Intervenor, Philadelphia Federation of Teachers, Local 3 AFT AFL–CIO, has been deleted from the caption. The parties' agreement to the intervention of the Philadelphia Federation of Teachers and the Pennsylvania State Education Association, which support the po-

sition of PSERS, was confirmed by Order of this Court filed on June 18, 1999.

**8.** *See Chimenti v. Department of Corrections*, 720 A.2d 205 (Pa.Cmwlth.1998). The Commonwealth Documents Law provides the following definition:

> (13) "**Statement of policy**" *means any document, except an adjudication or a regulation, promulgated by an agency which sets forth substantive or procedural personal or property rights, privileges, immunities, duties, liabilities or obligations of the public or any part thereof, and includes, without limiting the generality of the foregoing, any document interpreting or implementing any act of Assembly enforced or administered by such agency.*

Section 107 of the Act of July 31, 1968, P.L. 769, *as amended*. 45 P.S. § 1102.

**9.** Indeed, PSERS gave direct notice of this change to all public school employers and all members. The 1999 Policy is also posted on its website.

Section 8303(c) of the Retirement Code provides for the purchase of credit and receipt of eligibility points for "previous school service or creditable nonschool service." Eligibility points are based upon length of service and determine both the vesting of pension rights and the amount of pension to which an employee is entitled. Section 8303(c) states as follows:

(c) **Purchase of previous creditable service.**—Every active member of the system or a multiple service member who is an active member of the State Employees' Retirement System on or after the effective date of this part may purchase credit and receive eligibility points:

(1) as a member of Class T–C for *previous school service or creditable nonschool service;* or

(2) as a member of Class T–D for *previous school service,* provided the member elects to become a Class T–D member pursuant to section 8305.1 (relating to election to become a Class T–D member);

upon written agreement by the member and the board as to the manner of payment of the amount due for credit for such service; except, that any *purchase for reinstatement of service credit shall be for all service previously credited.*

24 Pa.C.S. § 8303(c) (emphasis added).

"Previous school service" is a defined term [10] in the Retirement Code that designates any service by a school employee in a Commonwealth school district prior to the member's entrance into the system. A "school employee" is any person working for regular remuneration in or on behalf of a public school. Since neither definition limits "service," it means both part-time and full-time service. Other sections of the Retirement Code support the interpretation that "service" by a "school employee" is the broadest possible group of persons. For example, Section 8301(a)(2) of the Retirement Code [11] limits membership

---

**10.** The Retirement Code provides, *inter alia,* these definitions:

"Previous school service." *Service rendered as a school employee* including service in any summer school conducted by a school district of the Commonwealth *prior to the member's* most recent *entrance in the system.*

"School employee." *Any person engaged in work relating to the public school* for any governmental entity and *for which work he is receiving regular renumeration as an* officer, administrator or *employee* excluding, however, any independent contractor or a person compensated on a fee basis.

"School service." *Service rendered as a school employee.*

24 Pa.C.S. § 8102 (emphasis added).

**11.** Section 8301 of the Retirement Code provides:

(a) Mandatory membership.—*Membership in the system shall be mandatory* as of the effective date of employment *for all school employees except the following:*

(1) Any officer or employee of the Department of Education, State-owned educational institutions, community colleges, area vocational-technical schools, technical institutes, or the Pennsylvania State University and who is a member of the State Employees' Retirement System or a member of another retirement program approved by the employer.

(2) Any school employee who is employed on a per diem or hourly basis for less than 80 full-day sessions or 500 hours in any fiscal year or annuitant who returns to school service under the provisions of section 8346(b) (relating to termination of annuities).

(3) Any officer or employee of a governmental entity who subsequent to December 22, 1965 and prior to July 1, 1975 administers, supervises, or teaches classes financed wholly or in part by the Federal Government so long as he continues in such service.

(4) Any part-time school employee who has an individual retirement account pursuant to the Federal act of September 2, 1974 (Public Law 93–406, 88 Stat. 829), known as the Employee Retirement Income Security Act of 1974.

to those "school employees" whose service exceeds 80 days or 500 hours in any fiscal year. In other words, "members" are a subset of "school employees;" they are not synonymous terms. This understanding is also confirmed in 24 Pa.C.S. § 8301(b), which denies membership to certain school employees.

■ PSERS interprets Section 8303(c) to permit members to purchase credit for pre-membership service rendered as a school employee. This interpretation applies the term "previous school service" in Section 8303(c) exactly as the legislature stated in its definition: any service by any school employee, whether part-time or full-time, whether or not the employee was a member at the time of service. We agree with PSERS's interpretation. Had the General Assembly intended to limit the purchase of part-time service to that performed as a member, it would have so stated. It could have said "previous school service *as a member*" in Section 8303(c), or it could have defined "previous school service" as "school service rendered *as a member*" in Section 8102. It did neither. The General Assembly defined its terms, and we must follow their meaning [12] when construing Section 8303(c).

PSBA rejects this interpretation of Section 8303(c), arguing that a purchase of credit for part-time school service can only be made for service performed as a member. Its argument [13] is threefold: (1) the heading of Section 8303(c) and its final clause limit the purchase to service rendered as a member; (2) the Retirement Code's other provisions limit creditable service to that performed as a member; and (3) this Court's holding in *Board of School Directors for Tredyffrin/Easttown School District v. The Public School Employees' Retirement Board,* 60 Pa.Cmwlth. 1, 430 A.2d 1018 (1981) limited "previous school service" to that which is more than 80 days or 500 hours. We address these arguments *seriatim.*

## I.

■ PSBA argues that the prefix to and final clause of Section 8303(c) limit "previous school service" to that which is creditable as a member, *i.e.,* in excess of 80 days and 500 hours. PSBA offers a strained meaning to the word "creditable" and, therefore, its argument is not persuasive.

■ First, a prefix has limited use in statutory construction. The Statutory Construction Act of 1972 provides that

---

(b) Prohibited membership.—The *school employees categorized in subsection (a)(1) and (2) shall not have the right to elect membership in the system.*

(c) Optional membership.—The school employees categorized in subsection (a)(3) and, if otherwise eligible, subsection (a)(4) shall have the right to elect membership in the system. *Once such election is exercised, membership shall commence from the original date of eligibility and shall continue until the termination of such service.*

24 Pa.C.S. § 8301 (emphasis added).

12. The definitions given by the legislature to the terms of a statute are controlling. *Hughes v. Pittsburgh,* 379 Pa. 145, 108 A.2d 698 (1954); *Allstate Insurance Company v. Heffner,* 491 Pa. 447, 421 A.2d 629 (1980).

13. PSBA's over-riding argument is that PSERS could not have been wrong for 24 years. It also argues that the Retirement Code has been amended on numerous occasions since 1975, and if the legislature had not approved of PSERS' earlier interpretation, it could have fixed it in one of its amendments. First, it is never too late to re-examine a statutory interpretation; a state agency is not required to be inflexible. Second, the General Assembly may, or may not, have known of PSERS' interpretation. PSBA's argument cuts both ways; there has been no legislative response in the three and one-half years since adoption of the 1999 Policy.

prefixed headings in a statute may serve as an aid in construction, but they are not to be controlling. 1 Pa.C.S. § 1924.[14] "The title of a statute may be considered in the construction of a statute only where the plain words of the statute are ambiguous, and, even in those cases, is not conclusive." *Licensed Beverage Association of Philadelphia v. Board of Education of School District of Philadelphia,* 669 A.2d 447, 450 (Pa.Cmwlth.1995). Here it is difficult to argue that "previous school service" is ambiguous in light of the fact that it has been defined. Assuming, *arguendo,* the meaning of "previous school service" were unclear, the prefix to Section 8303(c) is, at best, an aid that is not controlling. PSBA's focus on the prefix is, therefore, misplaced.

■ In any case, the prefix term "previous creditable service" supports PSERS's interpretation, not PSBA's. "Creditable" means simply "capable of being assigned [credit]." Webster's II New Collegiate Dictionary 265 (1995). School service of less than 80 days and 500 hours is capable of being assigned credit if, and when, the school employee becomes a member. The prefix is as general as possible because this statutory provision provides direction on a member's purchase of credit for both school service and nonschool service. The text uses the phrase "*creditable* nonschool service," because only a short list of nonschool service is creditable[15] for retirement purposes. It would be redundant to say "creditable school service" because all such service is creditable. In short, the prefix does not advance PSBA's construction of Section 8303(c).[16]

■ Next, PSBA directs us to the final clause of Section 8303(c), which requires that "any purchase for reinstatement of service credit shall be for all service previously credited." In PSBA's view, the only "service credit" that can be purchased is that which exceeds 80 days and 500 hours. However, the final clause addresses reinstatement of service previously credited.[17] It does not speak to the circumstance of the 1999 Policy: the purchase of service not yet credited. New members must purchase all service previously credited, but a member has the option not to purchase pre-membership, part-time service.[18]

■ PSBA contends that it is "absurd" that the legislature would *require* members to contribute for school service rendered as a member but make the purchase of pre-membership school service

---

14. Section 1924 of the Statutory Construction Act of 1972 states:

> The title and preamble of a statute may be considered in the construction thereof. Provisos shall be construed to limit rather than to extend the operation of the clauses to which they refer. Exceptions expressed in a statute shall be construed to exclude all others. The *headings prefixed* to titles, parts, articles, chapters, *sections* and other divisions of a statute *shall not be considered to control but may be used to aid* in the construction thereof.

1 Pa.C.S. § 1924 (emphasis added).

15. In Section 8304, the General Assembly set forth a detailed list of that nonschool service for which a member can purchase credit. 24 Pa.C.S. § 8304.

16. PSBA's interpretation of Section 8303(c) requires the addition of another modifier, "as a member" after "previous school service" Where the legislature includes specific language in one section of the statute and excludes it from another, the language should not be implied where excluded. *Fonner v. Shandon, Inc.,* 555 Pa. 370, 376, 724 A.2d 903, 906 (1999).

17. *See* PSERS regulation at 4 Pa.Code § 243.3(b).

18. This is similar to the option to purchase for military service or maternity leave.

optional. We disagree. The Retirement Code created several optional purchases of credit, such as military time or maternity leave. 24 Pa.C.S. § 8324. Part-time teaching service rendered pre-membership is just another optional purchase. However, we do find that PSBA's interpretation sets up distinctions in membership privileges that are unacceptable: it would give members the option to purchase credit for out-of-state school service, of any duration, but would deny them this option with respect to part-time Pennsylvania school service. 24 Pa.C.S. § 8304(b)(3).[19]

Section 8324 of the Retirement Code provides the computation formula for the purchase of credit for creditable *nonschool* service. Section 8324(d)[20] provides for the a multiplier of "years and *fractional part of a year* of creditable nonschool service." Section 8304(b)(3)[21] includes service in any public school in any state other than the Commonwealth as "creditable nonschool service." Accordingly, part-time service in a public school in any other state would be creditable in any fractional yearly amount, but, under the interpretation advocated by PSBA, that same fractional yearly service in a Commonwealth public school would not be "creditable." This inconsistency is unfair to the members of the system who have rendered all their service to schools within Pennsylvania.

In short, PSBA's interpretation fails. It ignores definitions provided by the General Assembly; it requires the insertion of phrases not used by the legislature; and it allows members to purchase credit for part-time teaching done in New Jersey but not in Pennsylvania.

## II.

■ PSBA next argues that reading Section 8303(c) together with other sections of the Retirement Code supports its interpretation. This is a valid approach to a statutory construction problem; however, this putative support in other statutory

---

**19.** 24 Pa.C.S. § 8304(b)(3) states:

(b) Creditable nonschool service credit shall be limited to:

\* \* \*

(3) Service in any public school or public educational institution in any state other than this Commonwealth or in any territory or area under the jurisdiction of the United States.

**20.** It states in relevant part:

(d) **Other creditable nonschool service.—** Contributions on account of Class T–C credit for creditable nonschool service other than military service shall be determined by applying the member's basic contribution rate plus the normal contribution rate as provided in section 8328 at the time of the member's entry into school service subsequent to such creditable nonschool service to his total compensation received during the first year of subsequent credited school service and *multiplying the product by the number of years and fractional part of a year of creditable nonschool service being purchased together with statutory interest dur-*

ing all periods of subsequent school or State service to the date of purchase, except that in the case of purchase of credit for creditable nonschool service as set forth in section 8304(b)(5) relating to creditable nonschool service) *the member shall pay only the employee's share unless otherwise provided by law.*

24 Pa.C.S. § 8324(d) (emphasis added).

**21.** It states in relevant part:

(b) **Limitations on nonschool service.—** Creditable nonschool service credit shall be limited to:

\* \* \*

(3) *Service in any public school* or public educational institution *in any state other than this Commonwealth* or in any territory or area under the jurisdiction of the United States. This paragraph includes service, prior to July 1, 1965, at a community college established under the act of August 24, 1963 (P.L. 1132, No. 484), known as the Community College Act of 1963.

24 Pa.C.S. § 8304(b)(3) (emphasis added).

provisions cannot be found. By contrast, there is support for PSERS's interpretation throughout the Retirement Code.

PSBA can only claim one specific section in the Retirement Code as support for its interpretation of Section 8303(c). It directs us to Section 8503(c), which states:

> *Purchase of credit for previous service.*—Upon receipt of an application from an active member or a State employee with multiple service credit to purchase credit for previous school or creditable nonschool service, the board shall determine and certify to the member the amount required to be paid by the member. When necessary, the *board shall certify to the proper employer the amount which would have been paid* together with statutory interest into the State accumulation account had such employee been an active member in the system during said period.

24 Pa.C.S. § 8503(c) (emphasis added). This section requires PSERS to issue a statement to the member that quantifies the cost of the purchase for previous service. It also requires PSERS to issue a cost statement to the employer "when necessary."

PSBA argues that the phrase "amount which *would* have been paid" can only refer to service as a member. This is correct, but employers only have to make a

contribution when the employee renders service *as a member*. For example, a person may be employed by state government and, subsequently, become a school employee, which event would trigger the need for PSERS to issue the Section 8503(c) statement to the school employer. This is why the sentence begins "when necessary;" this implies that there will be other situations where the Section 8503(c) statement to the employer will not be prepared, such as when a member purchases optimal service credit. PSBA's interpretation completely overlooks the prefatory "when necessary" and fails to take into account that the member and the employer each receive separate statements under Section 8503(c).

PSERS also argues that its interpretation of Section 8303(c) is supported by and is consistent with other provisions of the Retirement Code.[22] It does so with greater success than PSBA.

The Section 8303(c) phrase "previous school service or creditable nonschool service"[23] appears at different points in the Retirement Code.[24] Whenever this phrase appears, the Retirement Code consistently provides for the purchase of credit for service rendered pre-membership.

Section 8304 of the Retirement Code strictly limits the particular types of non-

---

**22.** PSERS' new interpretation of Section 8303(c) is consistent with Section 8302, which requires that part-time salaried employees be credited with "the fractional portion of the year which corresponds to the service *actually rendered.*" The new interpretation thereby permits this requirement, and other similar requirements, to be fully implemented. *See, e.g.,* 24 Pa.C.S. §§ 8504(b)(1); 8503(b); 8325; 8324(b), (d), (f); 8306; *see also* the 24 Pa.C.S. § 8102 definition of "final average salary." 24 Pa.C.S. §§ 8504–8505.

**23.** "Creditable nonschool service" is limited to the specific types of service enumerated in

Section 8304 of the Retirement Code. This service includes limited military service, service in a public school in a state other than Pennsylvania, service as a federal education administrator or instructor, service as a county school board director, service as a county nurse, service spent on maternity leave under specific limitations, and service in the Cadet Nurse Corps. This section limits eligibility and the number of years of nonschool service that may be credited. 24 Pa.C.S. § 8304.

**24.** *See, e.g.,* 24 Pa.C.S. §§ 8304, 8324.

school service that are "creditable," [25] but there are no express limits to "previous school service." This is consistent with the concept that the legislature intended that all "previous school service" could be purchased after the part-time teacher became a member of the system.

The terminology appears again in Section 8505, which directs members how to exercise the option to purchase "previous school or creditable nonschool service." As soon as practicable after an employee becomes a member, PSERS is required to issue a statement advising the new member of the "aggregate length of total previous school service and creditable nonschool service." Section 8505(a) of the Retirement Code, 24 Pa.C.S. § 8505(a). If membership were required in order to earn credit, there could be no such statement issued for "previous school service."

Section 8323(a) is entitled "Previous school service. . . ." It also requires the member to make a contribution for "school service not previously credited." If creditable service could only be earned as a member, there could no such contribution required.

"Creditable school service" is not a defined term in the Retirement Code and appears only once—in the title of Section 8323. Section 8323 of the Retirement Code provides the formula for computing amounts to be paid by members for various types of *school* service. The "creditable school service" [26] that may be reinstated by an active system member (or an eligible State employee) includes, (1) previously credited school service; (2) *school service not previously credited;* (3) sabbatical leave, or (4) "full-coverage membership." The formula set forth in Section 8323 for purchasing credit for "school service not previously credited" would make no sense if membership were required before credit could be earned.

PSERS's interpretation advances the privileges of membership in the retirement system in a way that is consistent with all provisions of the Retirement Code. Membership in the system under Section 8301 is absolutely required before a school employee can purchase credits. Membership defines *who* may purchase retirement benefit credits, but it does not define *what service* is available for purchase. Section 8303(c) of the Retirement Code establishes that pre-membership, part-time service in a Commonwealth school is available for the purchase of credit.

### III.

Finally, PSBA argues that this Court's holding in *Board of School Directors for Tredyffrin/Easttown School District v. The Public School Employees' Retirement Board,* 60 Pa.Cmwlth. 1, 430 A.2d 1018 (1981) decides this case. It maintains that

---

**25.** *See supra,* n. 14.

**26.** *Section 8323 of the Retirement Code provides:*

(a) Previous school service, sabbatical leave and full coverage.—The contributions to be paid by an active member or an eligible State employee for credit for reinstatement of all *previously credited school service, school service not previously credited,* sabbatical leave as if he had been in full-time daily attendance, or full-coverage membership shall be sufficient to provide an amount equal to the accumulated deduc-tions which would have been standing to the credit of the member for such service had regular member contributions been made with full coverage at the rate of contribution necessary to be credited as Class T–C service or Class T–D service if the member is a Class T–D member and had such contributions been credited with statutory interest during the period the contributions would have been made and during all periods of subsequent school and State service up to the date of purchase.

in *Tredyffrin* we held that only service that qualifies an employee for membership under Section 8301, *i.e.*, 80 full-day sessions or 500 hours in a fiscal year, is "creditable" part-time service. We disagree.

In *Tredyffrin* the controversy centered on the option of part-time employees to purchase service credits for the years prior to the 1975 enactment date of the new Retirement Code.[27] The PSBA opposed the purchase of any part-time service rendered prior to 1975, making essentially the same arguments advanced in the present case. The PSBA argued that "school service not previously credited" referenced in Section 8323(a) did not include part-time service rendered prior to 1975 because membership was limited under the 1959 Retirement Code to full-time employees. Therefore, pre-membership was not "creditable" service because it was service rendered by a non-member. In *Tredyffrin*, PSBA also challenged PSERS's requirement that the employer contribute the employer's share of the benefit for the member's purchase of credit for pre–1975 service.

This Court determined that the 1975 Retirement Code mandated membership for part-time employees (with more than 80 days and 500 hours of service per year) at the beginning of the 1975–1976 school year. *Tredyffrin*, 430 A.2d at 1020. Part-time employees who were granted membership in the 1975–1976 school year were immediately permitted to purchase part-time service rendered prior to that date. Full-time employees who had entered the school system as part-time employees were permitted to purchase the previous part-time service for retirement credit. Thus, in *Tredyffrin* this Court rejected PSBA's position that only service rendered to a school district *by a member* qualifies for purchase of retirement credit. This Court also determined that Section 8327 of the Retirement Code eliminated the employer's contribution[28] where school employees made a purchase of part-time service rendered before the 1975–1976 school year. Employee contributions constitute full payment for "buy-back" purposes. *Id.* at 1022.

The rulings in *Tredyffrin* are consistent with PSERS' interpretation of Section 8303(c): all school service may be credited to a member's retirement pension, even if rendered prior to membership, and employers will not be required to contribute their share where the member makes an optional purchase for pre-membership school service.

## CONCLUSION

We hold that Section 8303(c) of the Retirement Code gives members of PSERS the option to purchase credit for pre-membership school service that was less than 80 days and 500 hours in any fiscal year. Accordingly, we grant Summary Judgment

---

27. *See supra* n. 4.

28. The cost to the school districts of the 1999 policy is minimized since, under *Tredyffrin*, the districts are relieved from payment of the employer's share for the time purchased. Although there may be some transitional record-keeping inconveniences, and some attendant expense to the school districts, such administrative concerns cannot be used to deny school employees full credit under the Retirement Code for their time expended in the service of the school districts. The actu-

arial analysis done by PSERS (Stipulation of September 13, 2001, Exhibit J) reveals a potential unfunded liability of $77.4 million. The assets of the system approach $50 billion as of June 30, 2000. The estimate of the impact of this unfunded liability on the employer contribution rate ranged from .01% to .13%; for fiscal year 2001–2002, the employer contribution rate was .32%. In any case, we agree with PSERS that financial impact is not a recognized statutory construction tool.

in favor of the Public School Employees' Retirement System and against the Pennsylvania School Boards Association, Inc. In doing so, we affirm the right of members of the Public School Employees Retirement System to purchase credit for all part-time service rendered to a Commonwealth public school prior to membership.

Judge Simpson did not participate in the decision in this case.

### ORDER

AND NOW, this 12th day of August, 2002, the Application for Summary Relief of the Pennsylvania School Employees' Retirement System is granted and judgment entered in its favor. The Application for Summary Relief of the Pennsylvania School Boards Association, Inc. is denied.

