Gregory L. CUTLER, Petitioner

v.

**STATE CIVIL SERVICE COMMIS-
SION (OFFICE OF ADMINIS-
TRATION), Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 9, 2007.

Decided May 17, 2007.

Richard Koch, Carlisle, for petitioner.

Patricia J. Goldband, Sr. Counsel, Harrisburg, for respondent.

Frederick C. Smith, Jr., Chief Counsel, Harrisburg, for amicus curiae, State Civil Service Commission.

BEFORE: LEADBETTER, President Judge, LEAVITT, Judge (P.), FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Gregory L. Cutler petitions for review of an adjudication of the State Civil Service Commission (Commission) sustaining the decision of the Office of Administration not to appoint him to the position of Pennsylvania Management Associate.[1] The Commission held that Cutler, a veteran, was not entitled to have ten points added to his civil service examination test results because he had already used a veterans' preference at the time he was first hired by the Commonwealth. In this case, we consider the validity of the Commission's holding that a veterans' preference may be used once, and once only, in the course of one's employment in the classified service of the Commonwealth.

The facts material to this case are as follows. Cutler served six years of active duty in the U.S. Army, which was followed by eighteen years in the Army Reserve and Pennsylvania National Guard.

He remains a reservist; as recently as 2003, he was activated and served in Kosovo. Upon his return, Cutler took a job in July 2004 as an income maintenance worker with the Pennsylvania Department of Public Welfare. In December 2004, while still within his six month probationary period, Cutler applied for a Pennsylvania Management Associate (PMA) position with the Office of Administration. Individuals chosen for the PMA program undergo eighteen months of intensive on-the-job-training for careers in state government; training covers such areas as budget, human resources and public policy. Applicants must have a post-graduate degree and are required to take a civil service examination designed particularly for the PMA position. Cutler, who has a law degree, took the civil service examination along with numerous other applicants.

On April 15, 2005, after the examinations were scored, the Commission issued a list of eligible candidates. Cutler's name appeared at the top of the list as the only candidate to receive a score of 118. The director of the PMA program, Richard Whorl, phoned Cutler to offer him the position as a PMA, and Cutler accepted. The offer was confirmed by correspondence dated May 24, 2005, which Cutler signed and returned.

The next day, Whorl's assistant noticed that Cutler's application showed that he was a "working vet," a designation that suggested that Cutler had been given a veterans' preference when he was hired by the Department of Public Welfare as an income maintenance worker. However, a management directive of the Governor's Office provides that the veterans' preference may be used only once, i.e., at the

---

1. This matter is presently before the Court upon request of the Office of Administration for reconsideration of this Court's opinion of September 20, 2006, which request was granted on November 21, 2006. As a result, the Court withdrew its opinion and order of September 20, 2006.

time an employee enters the classified service. Believing that Cutler's top score on the PMA examination resulted from a veterans' preference, to which he was not entitled under this management directive, Whorl's assistant contacted the Commission. Agreeing that it had made a mistake, the Commission removed the ten-point veterans' preference from Cutler's score and reissued the certified list with the original date of April 15, 2005. On the reissued list, Cutler was one of twenty-nine applicants to receive a score of 108, now the top score on the examination.

The Office of Administration then examined Cutler's qualifications and compared them to those of the other twenty-eight applicants who had also scored 108 on the civil service examination. On his most recent performance evaluation of December 17, 2004, Cutler received a "needs improvement" rating, specifically in the areas of work habits, communication and job skills. As a result, his probationary status was extended for six months. The Office of Administration found Cutler not qualified for one of the thirteen openings in the PMA program. Accordingly, on May 27, 2005, Whorl called Cutler and informed him that the offer of employment as a PMA was being withdrawn; this conversation was confirmed by a letter dated June 9, 2005.

Cutler appealed to the Commission. Initially, he appealed the Commission's refusal to add ten points to his civil service examination test results. Cutler later amended his appeal to add a claim of discrimination, asserting that it was his forthcoming National Guard duty that prompted the Office of Administration to withdraw its job offer. By way of relief, Cutler requested the Commission to direct the Office of Administration to appoint him to the position of PMA and to award "[m]onetary damages equal to loss of pay [and] punitive damages." Reproduced Record at 76b (R.R. ___). In response, the Commission scheduled an investigative hearing to determine "whether there was a merit-related basis for the rescission of the May 24, 2005 offer of employment." R.R. 80b. Because Cutler had received a "needs improvement" performance evaluation, the Commission concluded that the Office of Administration acted on the basis of merit and dismissed Cutler's appeal.

On September 20, 2006, this Court reversed the Commission's adjudication for the reason that the management directive, on which the Commission relied, could not be reconciled with Chapter 71 of the Military Affairs Code. As such, the management directive did not justify the Commission's refusal to add 10 points to Cutler's examination results. The Office of Administration sought reconsideration, asserting that this Court erred in describing the management directive as issued by the Governor's Office, asserting that it was actually issued by the Executive Director of the Commission. Application for Reargument at 4. In granting reconsideration, this Court directed the parties to explain the nature of the management directive in question.[2]

2. Specifically, the parties were directed to answer the following questions:

 1. Whether Management Directive 580.21, adopted by the Governor's Office under the direction of the Executive Director of the State Civil Service Commission, is a management directive covered by 4 Pa.Code §§ 1.1–1.5.

2. Whether the State Civil Service Commission has authority to issue management directives on its own prerogative without approval of the Governor's Office.

*Cutler v. State Civil Service Commission (Office of Administration)* (No. 2178 C.D.2005, order filed November 21, 2006). The Office of Administration and the Commission, which filed an *amicus curiae* brief, have responded

The matter now stands ready for disposition. The Court addresses the issues raised by Cutler on appeal to this Court as well as the issue raised by the Office of Administration in its request for reconsideration.

■ On appeal,[3] Cutler has presented four issues for this Court's consideration. First, he contends that the Commission erred by removing the veterans' preference from his civil service examination results. Specifically, he contends that the management directive limiting the veterans' preference to a one-time use was based upon an improper construction of the Military Affairs Code, and, therefore, in no way can this management directive justify the Commission's holding. Second, Cutler contends that the Commission erred in treating his appointment to the position of PMA as a promotion rather than an initial appointment. Third, Cutler contends the Commission erred because it was impossible that in less than two days the Office of Administration could have

given due consideration of Cutler's qualifications, as compared to those of twenty-eight other candidates. Fourth, Cutler contends that the Commission erred in concluding that he did not effect a valid enforceable contract with the Office of Administration by signing and returning the offer letter of May 24, 2005.

■ As a preliminary matter, we consider, first, the contention of the Office of Administration that Cutler has waived two of these issues: (1) the claim that the Commission improperly denied him a veterans' preference on his PMA examination results and (2) the claim that the Commission improperly refused to enforce his employment contract. In support, the Office of Administration notes that although Cutler appealed pursuant to Section 951(b) of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. § 741.951(b), he was informed by the Commission that his hearing would be an "investigatory hearing" governed by Section 951(d).[4] The Commission's investigatory

to both inquiries in the affirmative. They agree that Management Directive 580.21 is governed by 4 Pa.Code §§ 1.1–1.5 and that the Executive Director, while responsible for the content of Management Directive 580.21, could not issue a management directive without oversight of the Secretary of Administration. Because the Office of Administration is part of the Governor's Office and because 4 Pa.Code §§ 1.1–1.5 was issued by the Governor's Office, the objection of the Office of Administration in its reconsideration petition amounts to no more than a quibble about the Court's choice of words.

3. The standard of review involving agency adjudications is limited to a determination of whether constitutional rights have been violated, errors of law have been committed, or whether the findings of the agency are supported by substantial evidence. *Department of Corrections v. State Civil Service Commission (Clapper),* 842 A.2d 526, 531, n. 7 (Pa. Cmwlth.2004).

4. Section 951 of the Civil Service Act provides in relevant part:

(a) Any regular employe in the classified service may, within twenty calendar days of receipt of notice from the appointing authority, appeal in writing to the commission. Any permanent separation, suspension for cause, furlough or demotion on the grounds that such action has been taken in his case in violation of the provisions of this act, upon receipt of such notice of appeal, the commission shall promptly schedule and hold a public hearing.

(b) Any person who is aggrieved by an alleged violation of section 905.1 of this act [relating to discrimination] may appeal in writing to the commission within twenty calendar days of the alleged violation. *Upon receipt of such notice of appeal, the commission shall promptly schedule and hold a public hearing.*

(d) Notwithstanding any other provisions of this section, the commission may, upon its own motion, investigate any personnel action taken pursuant to this act and, in its discretion, hold public hearings, record its findings and conclusions, and make such

hearing was limited, according to the Office of Administration, to the issues listed in Cutler's hearing notice, and that list did not include either Cutler's veterans' preference claim or his contract claim. Further, Cutler did not object to the Commission's hearing notice as written.

It is true that the Commission's hearing notice stated that it was governed by Section 951(d) of the Civil Service Act. However, the Commission allowed Cutler, without any objection from the Office of Administration, to present evidence and oral argument relevant to the question of whether he was entitled to a veterans' preference on his PMA civil service examination and whether he was entitled to contract damages. Further, the Commission addressed these issues in its adjudication under review in this appeal. Therefore, notwithstanding its notice, the Commission expanded the scope of its investigatory hearing to reach the issues raised by Cutler in his appeal.[5] Accordingly, Cutler's issues have been preserved for our review.

■ We turn to the merits of Cutler's appeal and consider the heart of this case, *i.e.,* whether Management Directive 580.21(2)(d),[6] which limits the veterans' preference to a one-time use by employees in the classified service, expresses a correct interpretation of Chapter 71 of the Military Affairs Code, entitled "Veterans'

Preference," 51 Pa.C.S. §§ 7101–7109. It was on the basis of Management Directive 580.21(2)(d) that the Commission dismissed Cutler's appeal, which he contends was error because this management directive is not consonant with the Military Affairs Code.

A management directive is one of several means by which the Governor manages executive branch agencies and employees under his control. In 1972, the Governor's Office, under authority of Article IV of the Pennsylvania Constitution, established the "Directives Management System." *See* 4 Pa.Code §§ 1.1–1.5. The system was designed "to provide comprehensive statements of policy and procedure on matters that affect agencies and employees under the Governor's jurisdiction." 4 Pa.Code § 1.1. Management directives "announce detailed policies, programs, responsibilities, and procedures that are relatively permanent" and are "signed by the Governor, Lieutenant Governor, Secretary of the Budget, Secretary of Administration, or the head of any department or independent board, commission or council under the Governor's jurisdiction." 4 Pa.Code § 1.2(2). Other "issuances from the Governor's Office" produced "through the Directives Management System" include executive orders, administrative circulars

orders as it deems appropriate to assure observance of the provisions of this act and the rules and regulations thereunder.

71 P.S. § 741.951(a)-(b), (d) (emphasis added). At least with respect to his claim of discrimination, the Commission appears to have been required by Section 951(b) of the Civil Service Act to conduct a hearing.

**5.** As an aside, "it is self evident that refusing a job applicant a veteran's preference, if required by statute, is not a merit-related" basis for rescinding an offer of employment to that applicant.

**6.** Section 2(d) of Management Directive 580.21, *as amended* June 5, 1997, stated in relevant part as follows:

Current classified service employees assigned regular or probationary status ... are **not** eligible for the [the veterans' preference] in 2.a.

(Emphasis in original). This Management Directive was subsequently amended on March 6, 2006. The language of former Section 2(d) is now found at Section 2(f). All references in this opinion are to Management Directive 580.21 in effect on June 5, 1997, because this is the version on which the Commission based its holding.

and procedural manuals. 4 Pa.Code § 1.2(1), (3) and (4).

Management Directive 580.21(2)(d) originated with the Executive Director of the Commission, who was responsible for its "technical content and propriety." 4 Pa. Code § 1.3(b).[7] It was approved by the Secretary of Administration, who is responsible for operating the Directives Management System. 4 Pa.Code § 1.3(a).[8] It is not clear that the Secretary of Administration actually signed Management Directive 580.21(2)(d), but this point is of no moment either to our analysis or to the outcome of this case.[9] What does matter is whether the content of Management Directive 580.21 correctly implements the Military Code.

 A management directive is not an administrative regulation with the force and effect of law.[10] *See Tire Jockey Service, Inc. v. Department of Environmental Protection*, 591 Pa. 73, 108, 915 A.2d 1165, 1186 (2007) (explaining that an agency's duly promulgated legislative-type regulation "is valid and binding upon courts as a statute so long as it is (a) adopted within the agency's granted power, (b) issued pursuant to proper procedure, and (c) reasonable."). A management directive is a tool for managing people in the executive branch of state government.[11] It is impor-

---

7. The Commission is an independent agency and, as such, a part of the executive branch of state government. Section 201 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 61, identifies the State Civil Service Commission as an "independent" agency. Section 102 of the Commonwealth Attorneys Act, Act of October 15, 1980, 71 P.S § 732–102, also identifies the State Civil Service Commission as an "independent agency." Independent agencies do not report to the Governor. *James J. Gory Mechanical Contracting, Inc. v. Philadelphia Housing Authority*, 579 Pa. 26, 31, 855 A.2d 669, 673 (2004). This does not mean, of course, that independent agencies cannot cooperate with agencies under the Governor's jurisdiction on matters of mutual interest. Indeed, Section 501 of the Administrative Code of 1929 provides, in relevant part, that the "several administrative departments, and the several independent administrative and departmental administrative boards and commissions, shall devise a practical and working basis for cooperation and coordination of work...." 71 P.S. § 181.

8. 4 Pa.Code § 1.3 provides:
 (a) The Secretary of Administration is responsible for operating the Directives Management System. Those responsibilities include the issuance of detailed instructions for operation of the system, ensuring that communications are reviewed for completeness and for their impact on other agencies and procedures, assuring consistency between publications, editing, maintenance of a distribution scheme, periodic publication of an index to current issuances and maintenance of back-up files on items issued.
 (b) Originating offices are responsible for the technical content and propriety of all documents issued through the Directives Management System.

9. The issue of whether the management directive was issued in accordance with 4 Pa. Code §§ 1.1–1.5 is not before us. Such a question is, in all likelihood, non-justiciable. *See Wilt v. Department of Revenue*, 62 Pa. Cmwlth. 316, 436 A.2d 713, 714 (1981).

10. The General Assembly distinguishes an "administrative regulation" from a "regulation." 45 Pa.C.S. § 501. A "regulation" includes "a proclamation, executive order, executive directive or other similar document promulgated by the Governor." *Id.* An "administrative regulation" is "[a]ny regulation except a proclamation, executive order, executive directive or other similar document promulgated by the Governor, and ... includes a regulation which may be promulgated by an agency only with the approval of the Governor." *Id.* All administrative regulations must be codified in the Pennsylvania Code. 45 Pa. C.S. § 702(2). All proclamations and executive orders of the Governor "which are general and permanent in nature" are codified in the Pennsylvania Code. 45 Pa.C.S. § 702(1).

11. Publication in the *Pennsylvania Code* is not required in order for a management directive,

tant to consider the differences between an administrative regulation and a management directive.

In *Shapp v. Butera*, 22 Pa.Cmwlth. 229, 348 A.2d 910 (1975), this Court reviewed the different types of executive orders and under what circumstances they could be enforced in a judicial proceeding. We held that a gubernatorial directive "intended for communication with subordinate officials ... for the execution of the duties of the Executive Branch of government" is nonjusticiable and not enforceable by court order. *Id.* at 913. Instead, the penalty for noncompliance would be a "demotion, ... reprimand, or a loss of favor." *Id.* By contrast, an executive order that serves to implement a statute can have the force of law and, thus, can be enforced in a court of law. *Id.* However, we also cautioned as follows:

> *In no event, however, may any executive order be contrary to any* constitutional or *statutory provision,* nor may it reverse, countermand, interfere with, or be contrary to any final decision or order of any court. The Governor's power is to execute the laws and not to create or interpret them. The Legislative Branch of government creates laws, and the Judicial Branch interprets them.

*Id.* at 914 (emphasis added). Although *Butera* concerned an executive order, its principles have been applied with equal force to management directives. *See, e.g., Wilt v. Department of Revenue*, 62 Pa. Cmwlth. 316, 436 A.2d 713, 714 (1981) (failure of Secretary of Revenue to follow management directive with respect to dismissal of non-civil service employee held to be non-justiciable because it was not issued to implement a statute).

Management Directive 580.21 is not binding on this Court. It is not an administrative regulation adopted by an agency pursuant to an express grant of legislative rule-making authority. *Tire Jockey Service*, 591 Pa. at 108, 915 A.2d at 1186. Rather, it is a directive designed to implement the veterans' preference law with regard to Commonwealth employees. It is only enforceable if consistent with statute. *Butera*, 348 A.2d at 914. Stated otherwise, Management Directive 580.21(2)(d) must track Chapter 71 of the Military Affairs Code in order to justify the Commission's adjudication under review here.

The Military Affairs Code provides that at any time in one's career in state or local government, whether at the point of appointment or at the point of promotion, the applicant with a history of military service is entitled to preferential treatment. Specifically, Chapter 71 states, in relevant part, as follows:

> When *any* soldier shall take *any civil service appointment or promotional examination* for a public position under the Commonwealth, he shall be given credit in the manner hereinafter provided[.]

51 Pa.C.S. § 7102(a)(emphasis added). The "credit hereinafter provided" is the addition of ten points to a civil service examination that has been passed. Section 7103(a) states:

> *Whenever any soldier shall successfully pass a civil service appointment or promotional examination for a public position* under this Commonwealth, or any political subdivision thereof, and shall thus establish that he possesses the qualifications required by law for appointment to or promotion in such public position, *such soldier's examination*

executive order, or proclamation to become effective. However, since 1970, "gubernatorial documents" that are "general and perma-

nent in nature" are published in the *Pennsylvania Code.* 4 Pa.Code, Part I, Note.

*shall be marked or graded an additional ten points above the mark or grade credited for the examination,* and shall determine his standing on any eligible or promotional list, certified or furnished to the appointing or promoting power.

51 Pa.C.S. § 7103(a) (emphasis added). The meaning of the statute is clear: whenever a veteran passes an appointment or promotional civil service examination, his score must be increased by ten points. The viability of this preference under the Pennsylvania Constitution's prohibition against special privilege legislation has generated a long history of litigation.

The case law precedent on the constitutionality of a veterans' preference statute begins with *Commonwealth ex rel. Graham v. Schmid,* 333 Pa. 568, 3 A.2d 701 (1938).[12] In that case, our Supreme Court considered the validity of Section 4401 of the Third Class City Law, Act of June 23, 1931, P.L. 932, 53 P.S. §§ 12198–4401, which gave a preference to the hiring of soldiers seeking employment with a third class city. The statute's validity was reviewed against Article III, Section 7 of the Pennsylvania Constitution, which prohibited "granting to any corporation, association or individual any special or exclusive privilege or immunity." PA. CONST. ART. III, § 7 (1874). In finding the veterans' preference to be constitutional, the Supreme Court explained that

> [t]here must be some reasonable relation between the basis of preference and the object to be obtained, the preference of veterans for the proper performance of public duties. Public policy, as well as constitutional restrictions, prohibits an unrestrained preference as it does a

preference credit based on factors not representative of true value.

*Schmid,* 333 Pa. at 573, 3 A.2d at 704 (emphasis added). The Supreme Court found a reasonable relation to exist because a soldier's military experience makes him a more desirable applicant for public employment where discipline, loyalty and public spirit are essential, just as they are in military service. *Id.* However, the Supreme Court cautioned against legislation that would assign military service an "unrestrained preference." *Id.*[13]

In 1945, the General Assembly enacted a comprehensive statute authorizing a preference for veterans seeking employment in both state and local government. Act of May 22, 1945, P.L. 837, 51 P.S. §§ 492.1–492.8. This statute applied the preference not just to the soldier seeking employment but also to the soldier seeking promotion or the soldier who was at risk of furlough. However, the extension of a veterans' preference to those seeking a promotion was challenged as unconstitutional under Article III, Section 7 of the Pennsylvania Constitution, as it was in *Schmid.* This time, the Supreme Court found in favor of the challenger.

The Supreme Court found the statute unconstitutional under the *Schmid* test because the statute placed too high a value on the benefit of military service when applying it to those seeking a promotion. *Commonwealth ex rel. Braden v. O'Neill,* 368 Pa. 369, 373, 83 A.2d 382, 383 (1951). The Supreme Court reasoned as follows:

> [T]he legislature, in authorizing the addition of ten percentage points to the

---

12. The Supreme Court traced the origins of a veterans' preference to the desire to give Civil War veterans, and their families, a preference in public positions throughout the Commonwealth. *Schmid,* 333 Pa. at 571, n. 3, 3 A.2d at 703, n. 3.

13. Indeed, the Supreme Court held that a fifteen percent credit called for in the Third Class City Law was too great. *Schmid,* 333 Pa. at 579–580, 3 A.2d at 707.

veterans' final examination marks in all competitive examinations for higher positions than the original appointments, has placed far too high a value on the benefit to the public service of the military training of veterans. *In the case of an original appointment, the training a veteran has received in the armed forces will, no doubt, make him more amenable to the following of orders, the observance of regulations and, in other ways, tend toward making him a desirable employee.* But the advantages to the public of this training are not absolute and, as time passes, the proportional benefit accruing to the public from the employment in such a service of veterans in preference to non-veterans gradually diminishes as both become proficient in the performance of their duties. In determining who is to be awarded a promotion, the skill of the particular examinees in the performance of their tasks is the prime consideration and compared to it the training gained by veterans solely as a result of military service becomes of very little importance. *To credit veteran examinees in examinations for successive promotions with the same total of gratuitous percentage points as in the instance of their original appointment to a public position is, therefore, a totally unjustified appraisal of the value of their military training and highly prejudicial to the public service.*

368 Pa. at 372–73, 83 A.2d at 383 (emphasis added). Thus, the Supreme Court held that giving a ten point credit to veterans taking an exam for promotion was unconstitutional. *Id.* at 375, 83 A.2d at 384. It placed too high a value on military training and was potentially harmful to those in public service.

Thereafter, in 1968, Pennsylvania amended its constitution. Article III, Section 7 of the 1874 Constitution was re-

placed by Article I, Section 17. This new provision does not prohibit a legislatively granted privilege unless it is irrevocable. It states that legislation shall not make "irrevocable any grant of special privileges or immunities...." Pa. Const. art. I, § 17. In 1975, the General Assembly codified the veterans' preference statute to make it Chapter 71 of the Military Affairs Code. Chapter 71 included the very provision held to be unconstitutional in *O'Neill,* i.e., it mandates a ten point preference to veterans taking a civil service examination for a promotion as well as for first time appointments.

In *Hoffman v. Township of Whitehall,* 544 Pa. 499, 677 A.2d 1200 (1996), our Supreme Court considered whether the change in the Pennsylvania Constitution removed the impediment to giving veterans a preference when taking an examination for a promotion. The Court held that *O'Neill* remained good law, notwithstanding the change to the Pennsylvania Constitution and notwithstanding the legislature's clear intention to have a veterans' preference apply with equal force to all examinations, whether taken for an initial appointment or for a subsequent promotion.

Most recently, our Supreme Court considered whether the Commission had authority to enforce Chapter 71 of the Military Affairs Code in discharging its responsibilities under the Civil Service Act. *Housing Authority of the County of Chester v. Pennsylvania State Civil Service Commission,* 556 Pa. 621, 730 A.2d 935 (1999). The Supreme Court held that when certifying a list of candidates eligible for a position in the classified service, it was appropriate for the Commission to add ten points to the examination results of a veteran candidate. It affirmed the lawfulness of that part of

Management Directive 580.21 that states as follows:

> a. Persons entitled to veterans' preference under the Military Affairs Act who take civil service examinations for appointment will:
>
> (1) Receive 10 additional points on their final earned ratings.

*County of Chester*, 556 Pa. at 634, 730 A.2d at 942 (quoting Management Directive 580.21(2)(a)(1)). The Supreme Court also affirmed, again, that a veterans' preference is constitutional when applied to those seeking appointment but not when applied to those seeking a promotion.

In sum, the General Assembly has granted veterans an unlimited right to a preference both for job applications and for job promotions. 51 Pa.C.S. § 7103(a). However, our Supreme Court has held that this statutory right has been circumscribed by the Pennsylvania Constitution's limits on special privilege legislation. Accordingly, the statutory veterans' preference may not be used for promotions, only for new appointments.

We turn to the appeal at hand. The Governor's Office and the Commission believe that the veterans' preference may be used once, and only once, by a veteran employed in one of the executive branch agencies under the direction of the Governor. Accordingly, the Executive Director of the Commission, with the approval of the Office of Administration, produced Management Directive 580.21 on June 5, 1997, which states, in relevant part, as follows:

> 2. Policy. Veterans' preference applies to appointment only, as follows:
>
> a. Eligible veterans under the Military Affairs Act who have completed their military service commitment and who have been honorably discharged PRIOR to taking a civil service examination, spouses of disabled veterans, and widows or widowers of veterans:
>
> (1) Receive 10 additional points on their final earned ratings, provided they pass the examination.

* * *

> d. *Current classified service employes* assigned regular or probationary status, except for those occupying positions described in 2.c., *are not eligible for* the entitlements in 2a.

(Emphasis added). It was by authority of Management Directive 580.21(2)(d) that the Commission held that Cutler was not entitled to "receive 10 additional points on his examination results for the PMA position."[14] For this conclusion to be valid, Management Directive 580.21(2)(d) must be consistent with the Military Affairs Code.[15] It is not.

Section 7103(a) of the Military Affairs Code mandates that a veteran receive ten

---

**14.** In its *amicus curiae* brief, the Commission claims that a remand is needed because this management directive is not of record. However, the Commission's adjudication cited Management Directive 580.21. Indeed, the Commission opined in its adjudication that "soldiers who are current full-time Civil service employees, like [Cutler], are not entitled to receive the additional ten points that Veterans' Preference provides." Commission Adjudication at 12. The Commission went on to explain why Cutler's reliance upon *County of Chester* was misplaced. *Id.* at 12–13.

**15.** Cutler argues that the Commission refused to give him a ten point veterans' preference because it treated his application to the PMA program as a promotion. The examination for the PMA program was an appointment exam, not a promotional exam. Under Section 3 of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. § 741.3, a "promotion" is defined as "the movement of an employe to another class in a pay range with a higher maximum salary." It is uncontested that the position of income maintenance worker and the position of PMA have the same pay grade and the same maximum

additional points on every civil service examination "whenever [he] shall successfully pass a civil service appointment or promotional examination for a public position [with] this Commonwealth." 51 Pa.C.S. § 7103(a). The Supreme Court has never held that a veterans' preference is limited to a single use in a career in public employment. To the contrary, as noted by our Supreme Court, "section 7104(b) [of the Military Affairs Code] clearly intends for the mandatory preference to apply to *all appointments, entry-level or otherwise,* and that the statute does not thereby operate in an unconstitutional manner." *County of Chester,* 556 Pa. at 644, 730 A.2d at 947–948 (emphasis added). Further, the constitutionality of allowing the use of a

veterans' preference each time a soldier takes a different examination for a new appointment is not a question before us. It has not been raised by either party in this appeal.[16]

Management Directive 580.21(2)(d) may express a future constitutional decision by our Supreme Court to limit the scope of 42 Pa.C.S. § 7103(a).[17] However, we must presume that statutes are constitutional as written. *Pennsylvania School Boards Association, Inc. v. Commonwealth Association of School Administrators,* 569 Pa. 436, 442, 805 A.2d 476, 479 (2002). Certainly, neither the Office of Administration nor the Commission has the authority to nullify a statute it is charged to implement.[18] *See In re Municipal Reapportionment of*

salary. As such, Cutler's transfer to the PMA position was not a "promotion" under the Civil Service Act. This means that the Supreme Court's holdings in *Hoffman* and in County of Chester are not dispositive here. In any case, the Commission did not deny Cutler a veterans' preference because he sought a promotion but, rather, because he was an employee in the classified service.

16. Cutler, of course, seeks the vindication of the use of the veterans' preference on several appointment examinations, not its repudiation.

17. The outcome of such a constitutional challenge is not obvious. In County of Chester, the Supreme Court explained the rationale for not allowing a preference for promotions as follows:

the reason for this distinction is simple. In the promotions context, the competing candidates are seeking to move up from within the same organization. They will have had ample opportunity during their tenure in that agency or organization to hone the skills relative to the promotion which they seek. If, during the period in which they have had the opportunity to develop their skills in the exact same environment as the rival candidates, they have failed to progress to the same skill level as those rivals, then the fact that they had experience in the armed services is not probative and does

not justify the candidate's shortcomings. On the other hand, when candidates seek appointment to a position in an organization or agency in which none of them have any experience, the fact that one of the candidates has military experience may rationally be viewed as that which distinguishes him as the superior candidate for the position.

556 Pa. at 647, 730 A.2d at 949. Here, the candidates for the PMA position each came from a different background and have not had "ample opportunity ... to hone the skills relative to the promotion which they seek." *Id.*

18. By contrast, administrative agencies can and should correct their mistaken interpretations of statute. *See, e.g., Pennsylvania School Boards Association v. Public School Employees' Retirement System,* 804 A.2d 737 (Pa. Cmwlth.2002) (denying declaratory relief where Public School Employees' Retirement System revised its 25–year old interpretation of the Public School Employees' Retirement Code). Indeed, one purpose of an administrative hearing is to allow an agency to correct its own errors. *Canonsburg General Hospital v. Department of Health,* 492 Pa. 68, 74, 422 A.2d 141, 145 (1980) (wherein it was noted that courts should presume that administrative hearings will allow an agency to discover and correct its own errors). The Commission could not find 51 Pa.C.S. § 7103(a)

*Township of Haverford,* 873 A.2d 821, 833, n. 18 (Pa.Cmwlth.2005) (determining the constitutionality of a statute or ordinance is beyond the province of an administrative agency). Unless and until the Supreme Court holds that it would be unconstitutional for a veteran already employed by the Commonwealth to use the statutory preference when applying for a new job in state government, we are constrained to hold that 51 Pa.C.S. § 7103(a) is a valid statute that was not applied correctly by the Commission. Management Directive 580.21(2)(d) is not consistent with the plain language of Chapter 71 of the Military Affairs Code; as such, it is unenforceable to the extent it seeks to limit the use of the preference to a one-time use. Because the Commission's holding cannot be reconciled with Chapter 71 of the Military Affairs Code, it must be set aside.[19]

For these reasons, we reverse the Commission's order and remand this matter with directions to add ten points to Cutler's rating on the PMA examination.

### ORDER

AND NOW, this 17th day of May, 2007, the order of the State Civil Service Commission, dated September 28, 2005, is hereby reversed and remanded in accordance with the attached opinion.

Jurisdiction relinquished.

---

unenforceable, but it could find Management Directive 580.21(d) to state an erroneous interpretation of statute.

19. Because we reverse, we need not address Cutler's claim that the Office of Administration did not expend enough energy in reviewing his qualifications as one of 29 persons eligible for 13 positions. We also need not address Cutler's argument that the Commission erred when it found that a valid contract was not created when the Office of Administration offered Cutler the PMA position, and Cutler accepted. The Commission held that a contract was not effected because of a mutual mistake of the parties. If there was a contract, it is the Board of Claims that has exclusive jurisdiction. *Employers Insurance of Wausau v. Department of Transportation,* 581 Pa. 381, 392, 865 A.2d 825, 832 (2005).