IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert M. McCord, in his official : 
capacity as the Treasurer of the : 
Commonwealth of Pennsylvania, : 
　　　　　　　　　　　　Plaintiff : 
　　　　　　　　　　　　　　　　: 
　　　　　　v. : 
　　　　　　　　　　　　　　　　: 
Pennsylvanians for Union Reform, : 
and Simon Campbell, President, : No. 87 M.D. 2014
　　　　　　　　　　　　Defendants : Submitted: February 6, 2015


BEFORE: 　HONORABLE BONNIE BRIGANCE LEADBETTER, Judge[1]
　　　　　　　HONORABLE P. KEVIN BROBSON, Judge
　　　　　　　HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE COVEY 　　　　　　　　　　　　　FILED: March 18, 2016


　　　　Robert M. McCord, in his official capacity as the Treasurer of the Commonwealth of Pennsylvania (State Treasurer)[2] moves this Court for partial judgment on the pleadings (Motion), seeking declaratory and injunctive relief against Pennsylvanians for Union Reform (PFUR). The issues before this Court are: (1) whether there are genuine issues of fact, and (2) whether the State Treasurer is entitled to judgment as a matter of law.

---

[1] This case was assigned to the opinion writer on or before January 31, 2016, when Judge Leadbetter assumed the status of senior judge.

[2] McCord resigned his office on January 30, 2015. Timothy P. Reese became State Treasurer on June 26, 2015. Under Pa.R.A.P. 502(c), when a public officer named in an appeal ceases to hold office, "his successor is automatically substituted as a party."

## Background

On January 15, 2014, the State Treasurer received a letter from PFUR's counsel requesting production of the executive branch employee list compiled and purportedly submitted to Pennsylvania's Treasury Department (Department) in accordance with Section 614 of The Administrative Code of 1929 (Administrative Code)[3] (List). Section 614 of the Administrative Code provides:

> (a) **All administrative departments, boards, and commissions and the Attorney General shall on July 15 of each year, transmit to** the Auditor General, **the State Treasurer** and Secretary of the Budget **a complete list**, and to the Legislative Data Processing Center a computer tape of such list, as of July 1 preceding, **of the names of all persons**, except day-laborers, **entitled to receive compensation from the Commonwealth for services rendered** in or to the department, board, or commission, as the case may be. **Such list shall show for each such person the position occupied, the date of birth, county of residence, voting residence, the salary at which or other basis upon which such person is entitled to be paid, the date of entry into the service of the Commonwealth, whether such person has been continuously employed by the Commonwealth since that date, and all periods of service and positions held as an employe of the Commonwealth, or such part of such information related to previous service and positions as the Governor may prescribe**.

> (a.1) The Auditor General and the State Treasurer shall on July 15 of each year transmit to the Secretary of the Budget a complete list, and to the Legislative Data Processing Center a computer tape of such list, as of July 1 preceding, of the names of all persons, except day-laborers, entitled to receive compensation from the Commonwealth for services rendered in or to the Auditor General or the State Treasurer, as the case may be. Such list shall show the position occupied by each such person, the date of birth and voting residence of such person, the salary at which or other basis

---

[3] Act of April 9, 1929, P.L. 177, *as amended*, added by Section 3 of the Act of September 27, 1978, P.L. 775, 71 P.S. § 234.

upon which such person is entitled to be paid, the date when such person entered the service of the Commonwealth, whether such person has been continuously employed by the Commonwealth since that date, and all periods of service and positions held as an employe of the Commonwealth.

(b) No later than the 15th of each month thereafter, the Attorney General, the heads of the several administrative departments, and the several independent administrative boards and commissions, shall certify to the Auditor General, the State Treasurer and the Secretary of the Budget any changes in the annual list of employes last transmitted to them which shall have occurred during the preceding month and shall provide to the Legislative Data Processing Center a computer tape of such changes.

(b.1) No later than the 15th of each month thereafter, the Auditor General and the State Treasurer shall certify to the Secretary of the Budget any changes in the annual list of employes last transmitted to them which shall have occurred during the preceding month and shall provide to the Legislative Data Processing Center a computer tape of such changes.

(c) **The information received by** the Auditor General, **the State Treasurer** and the Secretary of the Budget, under this section, **shall be public information, except that the information identifying the voting residence of the persons employed by the Commonwealth shall not be public information and may not be treated as such**.

71 P.S. § 234 (emphasis added). PFUR's request specified that it was not made under the Right-to-Know Law (RTKL).[4]

By January 22, 2014 letter, the State Treasurer replied that it would consider PFUR's request under the RTKL and respond within 30 days. On January 27, 2014, PFUR informed the State Treasurer that since the List was not sought under the RTKL, if the State Treasurer did not comply, PFUR intended to proceed with a mandamus action to enforce the Administrative Code.

---

[4] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

On February 24, 2014, the State Treasurer filed a petition for review in the nature of a complaint against PFUR and its president Simon Campbell (Campbell) seeking declaratory and injunctive relief concerning the State Treasurer's application of the RTKL and the personal safety and identification exemptions contained therein to PFUR's List request. On March 11, 2014, with leave of Court, the State Treasurer filed an Amended Complaint, wherein, he requested a declaration from this Court that:

- All requests for the production of records[] identified as 'public' pursuant to the Administrative Code[] are governed by the [RTKL]; and

- The [RTKL]'s exceptions for public records are applicable to all requests for public records; including records identified as 'public' pursuant to the Administrative Code; and

- Pursuant to the [Pennsylvania Web Accountability and Transparency Act (PennWATCH Act)[5]], the [RTKL]'s exceptions for publicizing records are applicable to requests for public records identified under the Administrative Code.

Amended Complaint at 2; *see also* Amended Complaint at 22.

On March 28, 2014, PFUR filed preliminary objections in the nature of a demurrer to the Amended Complaint. On May 14, 2014, this Court granted an application to intervene filed by the American Federation of State, County and Municipal Employees, Council 13, AFL-CIO; the Federation of State, Cultural and Educational Professionals, Local 2382 American Federation of Teachers of Pennsylvania, AFL-CIO; and the United Food and Commercial Workers, Local 1776, AFL-CIO (collectively, the Unions).

---

[5] Act of June 30, 2011, P.L. 81, 72 P.S. §§ 4664.1-4664.6.

4

On June 23, 2014, the State Treasurer opposed PFUR's preliminary objections, and the Commonwealth of Pennsylvania, Office of Administration (OA) filed an *amicus curiae* brief in opposition to PFUR's preliminary objections. On June 26, 2014, the Unions also filed a brief in opposition to PFUR's preliminary objections in which they adopted the State Treasurer's arguments. After hearing argument on PFUR's preliminary objections, this Court, by September 24, 2014 order, overruled PFUR's first preliminary objection because the Amended Complaint stated a cause of action against PFUR, and directed PFUR to answer the Amended Complaint. *McCord v. Pennsylvanians for Union Reform*, 100 A.3d 755 (Pa. Cmwlth. 2014) (*McCord I*).[6]

On October 14, 2014, PFUR timely filed an answer, new matter and counterclaim to the Amended Complaint.[7] On that same date, PFUR filed a third-party complaint joining OA as an additional defendant.[8] The State Treasurer answered PFUR's new matter on November 3, 2014. The Unions incorporated the State Treasurer's reply in their answer to PFUR's new matter. On November 14, 2014, OA filed an answer and new matter to PFUR's third-party complaint.[9] The pleadings are now closed.

---

[6] This Court also held that the Amended Complaint failed to state a cause of action against Campbell, and sustained PFUR's second preliminary objection. Consequently, Campbell was dismissed from the action. *McCord I.*

[7] PFUR's counterclaim seeks judgment in mandamus from this Court compelling the State Treasurer to comply with its statutory duty to supply the List to PFUR as prescribed by Section 614 of the Administrative Code. *See* PFUR Ans., N.M. and Counterclaim at 31.

[8] In the third-party complaint, PFUR seeks judgment in mandamus from this Court compelling OA to comply with its statutory duty to supply the List to the Auditor General, State Treasurer and Budget Secretary as prescribed by Section 614 of the Administrative Code. *See* PFUR Third-Party Complaint at 20-21.

[9] PFUR did not answer OA's new matter. Because OA's answer and new matter to PFUR's third-party complaint was not endorsed with a notice to plead, PFUR was not required to respond to OA's new matter, and the averments therein are deemed denied. *See* Pa.R.C.P. No. 1026(a); *see also McCormick v. Allegheny Gen. Hosp.*, 527 A.2d 1028 (Pa. Super. 1987).

## Motion for Judgment on the Pleadings

"Any party may move for a judgment on the pleadings after relevant pleadings are closed but within such time as not to unreasonably delay the trial." *Mun. Auth. of the Borough of Midland v. Ohioville Borough Mun. Auth.*, 108 A.3d 132, 136 (Pa. Cmwlth. 2015); *see also* Pa.R.C.P. No. 1034(a). If a court deems it proper, partial judgment can be entered on the pleadings. *Jeffrey Structures, Inc. v. Grimaldi*, 142 A.2d 378 (Pa. Super. 1958). "The court must treat [a] motion [for judgment on the pleadings] as if it were a preliminary objection in the nature of a demurrer." *Piehl v. City of Phila.*, 987 A.2d 146, 154 (Pa. 2009). Accordingly,

> [w]hen ruling on a motion for judgment on the pleadings, we view all of the opposing party's allegations as true, and only those facts that the opposing party has specifically admitted are considered against the opposing party. We consider only the pleadings themselves and any documents properly attached to them. **We grant judgment on the pleadings only when there is no genuine issue of fact <u>and</u> the moving party is entitled to judgment as a matter of law**.

*Stilp v. Gen. Assembly*, 929 A.2d 660, 661-62 n.3 (Pa. Cmwlth. 2007) (citations omitted; emphasis added), *aff'd*, 974 A.2d 491 (Pa. 2009). "Such a motion may be granted only where the law is clear that a trial would be a fruitless exercise." *Stoppie v. Johns*, 720 A.2d 808, 809 (Pa. Cmwlth. 1998).

Our Supreme Court has declared that courts considering a plaintiff's motion for judgment on the pleadings are limited to reviewing the complaint and the answer and new matter. *Herman v. Stern*, 213 A.2d 594 (Pa. 1965). However, where, as here, the State Treasurer also seeks review of PFUR's counterclaim, this Court is authorized to consider the counterclaim and the State Treasurer's reply thereto. *Bata v. Central-Penn Nat'l Bank of Phila.*, 224 A.2d 174 (Pa. 1966).

Here, the State Treasurer seeks judgment on the pleadings in his and the Unions'[10] favor. PFUR opposed the Motion on December 31, 2014. The State Treasurer responded to PFUR's opposition on January 12, 2015.

Initially, the State Treasurer represents in the Motion that "[t]here are no issues of material fact that would prevent a final resolution of the underlying issue: whether the [RTKL] and the exemptions contained therein apply to requests for access to the [List]." Motion ¶ 3. This Court's decision regarding the Motion turns upon the pleadings. *Stilp*. The State Treasurer's narrowing of the issue in the Motion notwithstanding, in the Amended Complaint, the State Treasurer requested a much broader declaration: that the RTKL and its exceptions govern **all requests for public records**, which may happen to include those identified as public by the Administrative Code. *See* Amended Complaint at 2; *see also* Amended Complaint at 22. The State Treasurer also seeks an order enjoining PFUR "from taking any action to prevent, prohibit, threaten, discourage or otherwise impede the State Treasurer from responding to **any request for the dissemination of a public record** in accordance with the provisions of the [RTKL], including, without limitation, any applicable exemptions thereunder." Amended Complaint at 22 (emphasis added).

Having determined that the specific relief sought by the State Treasurer in the Amended Complaint is overbroad, we hereby restate our conclusion in *McCord I* that "the fundamental issue presented by the Amended Complaint is whether the List is subject to redaction in accordance with the RTKL" (Limited Issue). *Id.* at 759.

A. <u>Genuine Issues of Fact</u>

Although applicability of the RTKL's exemptions to the List is a question of fact, whether the RTKL applies to PFUR's request in the first instance

---

[10] The Motion states that the Unions have "authorized [the State Treasurer's counsel] to represent to this Court their concurrence and joining in the submission of this Motion to this Court." Motion ¶ 4.

7

represents a purely legal issue which this Court is authorized to decide.[11] PFUR acknowledges in its brief that the latter issue presents a question of law.[12] PFUR Br. in Opp. at 21-22. Because the parties agree that there are no genuine issues of fact precluding this Court from deciding the Limited Issue, herein, we will decide only the Limited Issue.

## B. Judgment as a Matter of Law

### 1. Declaratory Judgment Claim

Section 7532 of the Declaratory Judgments Act, provides: "Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." 42 Pa.C.S. § 7532. Section 7541 of the Declaratory Judgments Act states that "[i]ts purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." 42 Pa.C.S. § 7541. Declaratory judgment is appropriate only where there exists an actual controversy. *Allegheny Cnty. Constables Ass'n, Inc. v. O'Malley*, 528 A.2d 716 (Pa. Cmwlth. 1987). "An actual controversy exists when litigation is both imminent and inevitable and the declaration sought will practically help to end the controversy between the parties." *Chester Cmty. Charter Sch. v. Dep't of Educ.*, 996 A.2d 68, 80 (Pa. Cmwlth. 2010). "Granting or denying a petition

---

[11] Whether a record is exempt from disclosure is a question of fact. 65 P.S. § 67.708(a) (the burden of proving exemption is on the Commonwealth agency by a preponderance of the evidence); *see also Bowling v. Office of Open Records*, 75 A.3d 453 (Pa. 2013); *Office of Open Records v. Center Twp.*, 95 A.3d 354 (Pa. Cmwlth. 2014). Statutory interpretation is purely a question of law. *Holland v. Marcy*, 883 A.2d 449 (Pa. 2005).

[12] *See* PFUR Br. in Opp. at 21 ("resolution of this legal issue"), 22 ("there is a possibility the [RTKL personal security] exception does not apply as a matter of law"; "this legal issue is ripe for the Court's disposal at this time"). PFUR states that "factual disputes will remain regarding the application of the exceptions," based on its position that the List's disclosure would not place public employee security at risk. PFUR Br. in Opp. at 21.

for a declaratory judgment is committed to the sound discretion of a court of original jurisdiction." *GTECH Corp. v. Dep't of Revenue*, 965 A.2d 1276, 1285 (Pa. Cmwlth. 2009).

The parties agree that the Limited Issue is ripe for disposal. The State Treasurer avers that "an immediate determination by the Court that public access to the [List] is governed by the [RTKL], including exemptions contained therein, would not only resolve the [State] Treasurer's original claim, but provide the predicate foundation upon which PFUR's claims against [OA] may be considered."[13] State Treasurer Br. in Supp. of Motion at 7. PFUR likewise states:

> Since the question of whether the Section 614 List is subject to redaction under the RTKL as a matter of law is a necessary component to the ultimate resolution of the controversy between the parties here, PFUR asks that this Court [] exercise its discretion and issue a legal ruling on this key issue.

PFUR Br. in Opp. at 22 (quotation marks omitted).

> It is precisely under such circumstances, where a party is in need of relief from 'uncertainty and insecurity with respect to rights, status, and other legal relations,' and where a legal or administrative remedy is inadequate, that declaratory relief is warranted. *See* 42 Pa.C.S. § 7541(a) . . . . [Office of Open Records' (OOR) determination that the PennWATCH Act and the RTKL control over Section 614 of the Administrative Code] affects numerous parties, all of whom are burdened with the task of either complying with OOR's interpretation or challenging the same when they are found to have violated it. Accordingly, declaratory relief is appropriate in the Commonwealth Court's original jurisdiction to avert the potential multiplicity of duplicative

---

[13] "The [State] Treasurer's request for partial judgment on the pleadings would leave [PFUR's new matter and counterclaim] to be resolved separately, after the underlying declaratory matter has been resolved, yet provide for a final determination as to the predicate issue – application of the [RTKL] to requests for the [List]." Br. in Supp. of Motion at 2-3. PFUR's third-party mandamus complaint against OA would also remain unresolved.

9

lawsuits with regard to the same issue [the State Treasurer] raised in [his] declaratory judgment action.

*Office of Governor v. Donahue*, 98 A.3d 1223, 1234-35 (Pa. 2014) (quotation marks omitted).

Because the applicability of the RTKL's exemptions to the List is a question of fact that would remain even if declaratory judgment is granted, this Court could refuse to enter judgment on that basis. *Dep't of Auditor Gen. v. Pa. State Police*, 844 A.2d 78 (Pa. Cmwlth. 2004). However, whether the RTKL applies to the List in the first instance represents a purely legal issue "necessary to the ultimate resolution of the controversy[,]" which this Court is authorized to decide.[14] *Id.* at 80. Liberally construing and administering the Declaratory Judgments Act, as we must, this Court holds that an actual controversy exists, and a declaration deciding the Limited Issue would serve to end the controversy between the parties and guide future record requests.

With respect to the merits of his declaratory judgment action, the State Treasurer argues:

> The legal merits of the declaratory judgment matter have been adequately briefed and argued by the parties. Each legal issue raised by PFUR has been resolved by this Court within the content of its [o]rder overruling [p]reliminary [o]bjections. In its [a]nswer, PFUR has not identified any new legal authority or claim that may materially impact this Court's determination of the application of the [RTKL] to [PFUR's] request for [] public access [to the List].

Br. in Supp. of Motion at 7. Although our decision in *McCord I* was based on whether the Amended Complaint stated a claim upon which relief could be granted, and here we have the benefit of additional pleadings, because both instances presented demurrers, our reasoning in *McCord I* is nevertheless applicable.

---

[14] See *supra* footnote 10.

10

This Court stated in *McCord I*:

> Because Section 614(c) of the Administrative Code clearly states that, with the exception of voting residence, the information contained on the List 'shall be public information,' the public *nature* of the information appears to have been 'established[.'. . .]
>
> The same cannot necessarily be said about the public's *access* to the List information. 'Conflicts as to public access . . . are governed by Section 3101.1 of the RTKL.' [*Dep't of Labor & Indus. v.*] *Heltzel,* 90 A.3d [823,] 832 [Pa. Cmwlth. 2014)]. Thus, **if** it were to be determined that the RTKL's access provisions conflicted with Section 614 of the Administrative Code, the RTKL would not apply. However, as the State Treasurer pointed out in his Amended Complaint, 'the Administrative Code . . . is silent as to the manner in which public information is obtained. . . . .' Amended Complaint [] ¶ 47.[15] Further, Section 701(a) of the RTKL provides in pertinent part: 'Unless otherwise provided by law, a public record . . . shall be accessible . . . in accordance with [the RTKL].' 65 P.S. § 67.701(a). Arguably, since Section 614 of the Administrative Code does not address public access to the List, it **may** be found not to conflict with the RTKL's access provisions and, therefore, the RTKL's access provisions, including its statutory exemptions, **could** apply.

*McCord I*, 100 A.3d. at 762 (emphasis in original).[16]

---

[15] PFUR denied this averment as a legal conclusion, and incorporated references to Section 306 of the RTKL (that the RTKL cannot supersede or modify the List's public nature) and Section 3101.1 of the RTKL (that the RTKL's access provisions apply only if they do not conflict with another state law), 65 P.S. §§ 67.306, 3101.1. *See* PFUR Ans., N.M. and Counterclaim ¶¶ 39, 47.

[16] PFUR contends that, in *McCord I*, this Court "implied that the RTKL's statutory exemptions are 'access provisions.'" PFUR Br. in Opp. at 16 (quoting *McCord I*, 100 A.3d at 762). However, in *McCord I*, this Court stated that since the List's public nature was established by Section 614(c) of the Administrative Code, what the RTKL specified was public or not public appeared to be inapplicable. This Court further explained that, pursuant to Section 3101.1 of the RTKL, if Section 614 of the Administrative Code has access provisions that conflict with any RTKL provisions regarding access, the RTKL's access provisions shall be inapplicable. At no point did this Court imply that the RTKL's exceptions are access provisions.

11

This Court and the Pennsylvania Supreme Court have made clear that the RTKL does not automatically apply to every record request. Indeed, other statutes can "provide other avenues[] and set other parameters for access to records . . . independently of the RTKL. Pursuant to Section 3101.1 of the RTKL, their procedural hurdles, and exceptions, remain intact and enforceable." *Heltzel*, 90 A.3d at 833 (footnote omitted). Further, approximately six weeks after this Court issued *McCord I*, our Supreme Court declared in *Pennsylvania Gaming Control Board v. Office of Open Records*, 103 A.3d 1276 (Pa. 2014) (*PGCB*), that the RTKL's provisions are not invoked in the first instance if, as in the instant case, a document request is not addressed to an agency's open records officer. In *PGCB*, the General Assembly argued and the Supreme Court agreed that "there should be no default assumption that every written request to every employee is a[n] RTKL request. Rather, the RTKL was devised for those seeking records who believe that they may need RTKL remedies in the event that an agency is not cooperative." *Id.* at 1283. Thus, although Section 614 of the Administrative Code does not expressly state how the List should be made publicly accessible, the RTKL's provisions do not apply if accessibility is otherwise provided by law. The *PGCB* Court stated:

> In analyzing this matter, we are guided by the Statutory Construction Act of 1972.[17] The Act makes clear that: '[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly.' 1 Pa.C.S. § 1921(a). To that end, the general rule is that '[w]ords and phrases [are to] be construed . . . according to their common and approved usage[,]' *id.* § 1903(a), and '[e]very statute [is to] be construed, if possible, to give effect to all its provisions.' *Id.* § 1921(a). The Act further provides, '[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.' *Id.* § 1921(b). **Only where the operative statutory language is**

---

[17] 1 Pa.C.S. §§ 1501-1991.

**not explicit in conveying the intent of the General Assembly should courts look beyond the General Assembly's words to ascertain its intent**. In doing so, as it becomes necessary, the Act provides that courts may ascertain such intent by looking to several enumerated considerations, including, *inter alia,* '[t]he **mischief to be remedied** [,]' '[t]he **object to be attained[,]'** and '[t]he **consequences of a particular interpretation**.' *Id.* § 1921(c). It is presumed, under the Act, '[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable[,] and '[t]hat the General Assembly intends the entire statute to be effective and certain.' *Id.* § 1922. Moreover, the Act explains that parts of statutes which are in *pari materia, i.e.,* statutory parts which relate to the same persons or things, are to be construed together wherever possible. *Id.* § 1932.

*PGCB*, 103 A.3d at 1284 (emphasis added).

PFUR, quoting Section 603 of the Administrative Code, Section 7.201 of the Administrative Regulations,[18] the Supreme Court's *PGCB* decision, and Management Directives 505.12 and 505.18 Amended, attempted in its new matter to demonstrate that the RTKL does not apply to its List request. To determine the interplay among these statutory provisions and the Regulation, we must examine each individually.

Section 603 of the Administrative Code was Section 614's predecessor. Enacted in 1929 and amended in 1931, Section 603 of the Administrative Code mandated all administrative departments, boards and commissions to transmit to the Auditor General, Budget Secretary and State Treasurer by June 15th their employee Lists containing each Commonwealth employee's position, date of birth, voting residence, salary, appointment date, whether he/she was continuously employed, periods of service and positions held (or such part of this information the Governor may prescribe). Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 223, repealed by Section 2 of the Act of September 27, 1978, P.L. 775. *See* PFUR Ans., N.M. and

---

[18] 4 Pa. Code § 7.201.

13

Counterclaim ¶¶ 71-72, Ex. A. Like Section 614 of the Administrative Code, Section 603 declared that the above information was public, but did not specify how the information would be accessible. *See former* 71 P.S. § 223 ("The information received by the . . . State Treasurer . . . under this section shall be public.").[19]

However, on December 23, 1976, Section 7.201 of the Administrative Regulations was promulgated to provide direction in the application of the Right-to-Know Act and read as follows:

> Under [**Section 3 of the Right-to-Know Act**, Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. § 66.3, repealed by Section 3 of the Act of June 29, 2002, P.L. 663,] **a list of salaried employes under the jurisdiction of the Governor**, **having been declared public information by [S]ection 603 of The Administrative Code of 1929 (71 P.S. § 223), will be made accessible to citizens of the Commonwealth as follows**:
>
>> (1) **The list shall be available, without written request**, **during regular business hours at the** Government Publications Section, **State Library**, Room 116 Education Building, Commonwealth Avenue and South Drive, Harrisburg, Pennsylvania 17120.
>>
>> (2) **A citizen of the Commonwealth may inspect, extract, photograph or copy all or any part of the list**. Rules of the State Library as to access, copying and charges for copying will apply.

4 Pa. Code § 7.201 (emphasis added); *see also* PFUR Ans., N.M. and Counterclaim ¶ 76. At the time Section 7.201 of the Administrative Regulations was promulgated, Section 3 of the Right-to-Know Act referenced therein afforded Commonwealth citizens the right "to . . . make copies of public records . . . while such records are in the possession, custody and control of the lawful custodian thereof . . ." subject to reasonable rules. 65 P.S. § 66.3; *see also* PFUR Ans., N.M. and Counterclaim at 17

---

[19] Repealed by Section 2 of the Act of September 27, 1978, P.L. 775.

14

n.2. Because properly promulgated regulations have the force and effect of law, *Main Line Health, Inc. v. Pennsylvania Med. Prof'l Liab. Catastrophe Loss Fund*, 738 A.2d 66 (Pa. Cmwlth. 1999), *aff'd*, 777 A.2d 1048 (Pa. 2001), Section 7.201 of the Administrative Regulations filled in where Section 603 of the Administrative Code was "silent as to the manner in which [the] public information is obtained."[20] Amended Complaint ¶ 47; *see also McCord I* at 762. Both Section 7.201 of the Administrative Regulations and Section 3 of the Right-to-Know Act authorized Commonwealth citizens to appear at an agency and examine and copy its public records. Section 7.201 of the Administrative Regulations specifically directed those seeking the List to the State Library.

Approximately two years later, by the Act of September 27, 1978, P.L. 775, the General Assembly simultaneously repealed Section 603 of the Administrative Code and enacted Section 614 of the Administrative Code. *See* PFUR Ans., N.M. and Counterclaim Ex. B. With that change, all administrative departments, boards, commissions *and the Attorney General* were required to submit *by July 15th* their Lists containing each employee's position, date of birth, *county of residence*, voting residence, salary, appointment date, whether continuously employed, periods of service and positions held (or such part of this information the Governor may prescribe), to the Auditor General, State Treasurer and Budget Secretary, and to send a computer tape of the List to the Legislative Data Processing Center. Under Section 614 of the Administrative Code, the List information

---

[20] General access to the List was authorized by Section 2(a) of the Right-to-Know Act, which stated in pertinent part: "Unless otherwise provided by law, a public record shall be accessible for inspection and duplication by a requester in accordance with this [Right-to-Know Act]." 65 P.S. § 66.2(a). Repealed by Section 3102(2)(ii) of the RTKL, 65 P.S. § 67.3102(2)(ii). *See now* Section 701(a) of the RTKL, which states, in similar relevant part: "Unless otherwise provided by law, a public record, legislative record or financial record shall be accessible for inspection and duplication in accordance with this [RTKL]." 65 P.S. § 67.701(a).

15

continued to be public. Pursuant to Section 7.201 of the Administrative Regulations, the List continued to be available for public inspection and copying at the State Library without a written request.

Twenty-four years later, effective December 26, 2002, "the General Assembly amended the [Right-to-Know Act], revamping the procedures to be followed for obtaining access to public records. A streamlined, expeditious set of procedures for accessing public records was created[.]" *Bowling v. Office of Open Records*, 75 A.3d 453, 455 (Pa. 2013). As part of that process, Section 3 of the Right-to-Know Act was repealed.[21] The repeal of Section 3 of the Right-to-Know Act, in effect, eliminated reference to the Right-to-Know Act from Section 7.201 of the Administrative Regulations.[22] Omitting the words, "Under [S]ection 3 of the [Right-to-Know Act]" from Section 7.201 of the Administrative Regulations did not change the substance of Section 7.201 of the Administrative Regulations. 4 Pa. Code § 7.201. The List remained available, pursuant to Section 7.201 of the Administrative Regulations, for public inspection and copying at the State Library without a written request.

---

[21] Section 3 of the Right-to-Know Act was replaced with new, more detailed access provisions in Sections 3.1 through 3.5 of the Act of June 29, 2002, P.L. 663 and added Sections 66.3-1 (relating to denials based on requester's intent), 66.3-2 (pertaining to redaction), 66.3-3 (addressing Commonwealth agency responses to written access requests), 66.3-4 (regarding non-Commonwealth agency responses to written access requests) and 66.3-5 (discussing final agency determinations) to the Right-to-Know Act. 65 P.S. §§ 66.3-1-66.3-5.

Sections 66.3-3 through 66.3-5 of the Right-to-Know Act were repealed with the RTKL's enactment seven years later, on January 1, 2009. Now, Section 701 of the RTKL addresses access, Section 702 relates to request forms, Section 703 pertains to written request procedures, Section 704 discusses electronic access, Section 705 relates to record creation, and Section 706 explains redaction. 65 P.S. §§ 67.701-67.706.

[22] Section 21.32(b) of the Legislative Reference Bureau's regulations provides: "When drafting a revision which encompasses prior statutory provisions which have been supplied and hence repealed by a subsequent general statute, the superseded language is omitted." 101 Pa. Code § 21.32.

Effective just days later on December 30, 2002, Section 614 of the Administrative Code was amended by Section 3 of the Act of December 30, 2002, P.L. 2075, to include *county of residence* to the List's public information and to *preclude disclosure of an employee's voting residence*. *See* 71 P.S. § 234; *see also* PFUR Ans., N.M. and Counterclaim ¶¶ 79, 81-83. Because Section 7.201 of the Administrative Regulations remained effective, the List (including counties of residence and precluding voting residences), was available for public inspection and copying at the State Library without a written request.

When the RTKL became effective on January 1, 2009, Section 3103 of the RTKL stated: "Notwithstanding 1 Pa.C.S. § 1937(b) (relating to references to statutes and regulations), reference in a statute or regulation to the [Right-to-Know Act] . . . shall be deemed a reference to [the RTKL]." 65 P.S. § 67.3103. However, the Statutory Construction Act of 1972 states, in relevant part: "The repeal of an amendatory statute does not revive the corresponding provision or section of the original statute or of any prior amendment." 1 Pa.C.S. § 1956. Here, rather than referring generally to the Right-to-Know Act, Section 7.201 of the Administrative Regulations previously referenced only a single, specific section of the Right-to-Know Act that was omitted from Section 7.201 of the Administrative Regulations for seven years. Under the circumstances, Section 3103 of the RTKL did not revive the previously-omitted reference in Section 7.201 of the Administrative Regulations to the Right-to-Know Law.

Based upon a strict reading of Section 614 of the Administrative Code and Section 7.201 of the Administrative Regulations, at the time of PFUR's request, the List (including each Commonwealth employee's name, agency, position, date of birth, county of residence, salary, appointment date, whether he/she has been continuously employed, periods of service and positions held) is to be accessible to

17

Commonwealth citizens at the State Library without a written request or other limitation by the RTKL.

The State Treasurer also contends that the PennWATCH Act makes the RTKL applicable to the List. *See* Amended Complaint ¶¶ 57-62; *see also* PFUR Ans., N.M. and Counterclaim ¶¶ 57-62. Specifically, the State Treasurer avers in the Amended Complaint that, in accordance with the PennWATCH Act, enacted in 2011, the RTKL's exemptions are applicable to records identified as public in Section 614 of the Administrative Code. Amended Complaint ¶¶ 14-15, 57-58. Under Section 3(a) of the PennWATCH Act, OA was required by December 31, 2012 to "develop, implement and maintain a single, searchable, public [i]nternet website to be called PennWATCH." 72 P.S. § 4664.3(a). By January 15, 2013, OA was to make accessible on PennWATCH "the following for each individual employed by a Commonwealth agency: (1) Name[;] (2) Position or title[;] and, (3) Total compensation . . . paid." 72 P.S. § 4664.3(e.1). Section 3(g) of the PennWATCH Act specifically excluded from access on PennWATCH "[r]ecords not subject to disclosure under the [RTKL]." 72 P.S. § 4664.3(g). The State Treasurer maintains that because Section 3(g)(2) of the PennWATCH Act prohibits disclosure of and mandates redaction of employee information exempt from disclosure under the RTKL, the List made public by Section 614 of the Administrative Code must be similarly redacted. Amended Complaint ¶¶ 59-60, 62; 72 P.S. § 4664.3(g)(2). However, because PennWATCH contains only a small portion of the List information and the General Assembly did not similarly make the List subject to the RTKL, the State Treasurer's argument must fail. Therefore, the PennWATCH Act does not make the RTKL applicable to the List.

PFUR contends that the Governor has, by Management Directive, unilaterally authorized OA to step into the State Treasurer's shoes, eliminate county of residence from the List, and dispense with the List's public accessibility at the

18

State Library, and that the Auditor General, the State Treasurer and the Budget Secretary have acquiesced in those changes.[23]   *See* PFUR Ans., N.M. and Counterclaim ¶ 90.   The State Treasurer denied that Management Directives 505.12 and 505.18 Amended are applicable to the State Treasurer, and that he has acquiesced to the Governor's procedural changes.   PFUR Ans., N.M. and Counterclaim ¶¶ 73-75, 77, 86-87, 90; State Treasurer Reply to N.M. ¶¶ 73-75, 77, 86-87, 90.

> Initially, we recognize:
>
> A management directive is one of several means by which the Governor manages executive branch agencies and employees under his control.   In 1972, the Governor's Office, under authority of Article IV of the Pennsylvania Constitution, established the 'Directives Management System.'   *See* 4 Pa. Code §§ 1.1–1.5.   The system was designed 'to provide comprehensive statements of policy and procedure on matters that affect agencies and employees under the Governor's jurisdiction.'   4 Pa. Code § 1.1.   Management directives 'announce detailed policies, programs, responsibilities, and procedures that are relatively permanent' and are 'signed by the Governor, Lieutenant Governor, Secretary of the Budget, Secretary of Administration, or the head of any department or independent board, commission or council under the Governor's jurisdiction.'   4 Pa. Code § 1.2(2).

*Cutler v. State Civil Serv. Comm'n (Office of Admin.)*, 924 A.2d 706, 710 (Pa. Cmwlth. 2007).   However, "[a] management directive is not an administrative regulation with the force and effect of law. . . .   [It] is a tool for managing people in the executive branch of state government."   *Id.* at 711.   Neither the Governor nor OA has "the authority to nullify a statute [they are] charged to implement."   *Id.* at 716.

---

[23] The State Treasurer did not dispute that, on October 1, 1976, the Governor issued Management Directive 505.12, which was rescinded and replaced by Management Directive 505.18 on July 26, 2010, and was amended again on May 29, 2012, but denied that the Management Directives applied to the State Treasurer.   PFUR Ans., N.M. and Counterclaim ¶¶ 73-75, 77-78, 85-89; State Treasurer Reply to N.M. ¶¶ 73-75, 77-78, 85-89.

Management Directives are "only enforceable if [they are] consistent with [the] statute" they implement. *Id.* at 712.

Regardless of whether Management Directive 505.18 Amended is the Governor's attempt to keep current with advanced technology, in that the records are now electronically maintained and accessible, or perhaps it represents the Executive Branch's desire to streamline the process, there have been no amendments to either Section 614 of the Administrative Code or Section 7.201 of the Administrative Regulations authorizing OA to step into the State Treasurer's shoes, to eliminate county of residence from the List, or to forego the List's public accessibility at the State Library. Therefore, to the extent that they are inconsistent with and/or propose to change existing law, Management Directives 505.12 and 505.18 Amended are inapplicable.

Notwithstanding, the State Treasurer concedes that the List may not currently comply with Section 614 of the Administrative Code. According to the Amended Complaint, the List is transmitted by OA in two electronic text files. *See* Amended Complaint ¶ 17. The "primary list" identifies the executive branch employees (specified as employees under the Governor's jurisdiction, the State Police and the Office of Attorney General), without reference to birthdays and months and residential addresses. Amended Complaint ¶¶ 17, 19-20. The "restricted list" contains information for employees whose positions are investigatory in nature, including the Department of Corrections, the Department of Public Welfare and the Board of Probation and Parole, and contains only last names, salaries, positions, agency names and dates of service. Amended Complaint ¶¶ 17-19, 21. Thus, the List does not include all of the information identified in Section 614 of the Administrative Code, and neither version has been redacted to exclude information for those employees who have active protection from abuse orders, are victims of domestic or

sexual violence, or are confidential/undercover agents or other at-risk law enforcement officials. *See* Amended Complaint ¶¶ 19, 22.

Based solely on the pleadings, applicable statutory and regulatory law, and case law – particularly *PGCB*, we conclude that when PFUR made its January 2014 request, the List containing employee names, agencies, positions, dates of birth, counties of residence, salaries, appointment dates, whether they have been continuously employed, periods of service and positions held should have been accessible at the State Library without a written request under or limitation by the RTKL. Therefore, we hold as a matter of law that the List is not subject to redaction under the RTKL. Accordingly, the State Treasurer's motion for partial judgment on the pleadings in his favor on the Limited Issue is denied. However, the extent to which the List currently complies with Section 614 of the Administrative Code is a factual question this Court cannot decide based merely on the pleadings.[24] Thus, litigation of the State Treasurer's Amended Complaint, PFUR's counterclaim against

---

[24] The Commonwealth agencies and this Court are, once again, left to fill in legislative gaps created by the General Assembly. The practical effect of this opinion is that Section 614 of the Administrative Code requires that the State Treasurer disseminate information that is exempt from disclosure under the RTKL for personal security reasons. For example, under Section 614 of the Administrative Code, PFUR is entitled to employees' full dates of birth. However, the State Treasurer represented that the List denotes only employee birth years which, while not in accordance with Section 614 of the Administrative Code, is in accordance with *Governor's Office of Administration v. Purcell*, 35 A.3d 811 (Pa. Cmwlth. 2011), wherein this Court held that the personal security exception to the RTKL exempts employee months and dates of birth from disclosure. Moreover, although full names of law enforcement and corrections officers are to be accessible without limitation under Section 614 of the Administrative Code, the State Treasurer admitted that the List, not in compliance of Section 614 of the Administrative Code, currently contains only last names, which is in compliance with the RTKL. *See Carey v. Dep't of Corr.*, 61 A.3d 367 (Pa. Cmwlth. 2013) (citing *Stein v. Office of Open Records* (Pa. Cmwlth., No. 1236 C.D. 2009, filed May 19, 2010)).

the State Treasurer and PFUR's third-party complaint against OA shall proceed on that issue.

## 2. Injunctive Relief Claim

The State Treasurer also seeks an order from this Court "enjoining [PFUR] and its officers, agents and employees, from taking any action to prevent, prohibit, threaten, discourage or otherwise impede the State Treasurer from responding to any request for dissemination of a public record in accordance with the provisions of the [RTKL], including, without limitation, any applicable exemptions thereunder." Amended Complaint at 22. This Court has held that "[t]he party seeking the injunction must establish that (1) the right to relief is clear, (2) there is an urgent necessity to avoid an injury which cannot be compensated for by damages, and (3) greater injury will result in refusing rather than granting the relief requested." *Big Bass Lake Cmty. Ass'n v. Warren*, 23 A.3d 619, 626 (Pa. Cmwlth. 2011). Each of the above requirements must be satisfied before an injunction will be ordered. *Id.* Having determined that the State Treasurer's right to relief is not clear, he has not met the first criteria for an injunction and, thus, this Court may not enjoin PFUR's request for the List outside the RTKL. Accordingly, the State Treasurer is not entitled to an injunction as a matter of law.

Based upon the foregoing, the State Treasurer's partial motion for judgment on the pleading is denied insofar as this Court has decided that the RTKL and the exemptions contained therein do not apply to the List. Because the State Treasurer is not entitled to an injunction as a matter of law, references in the Amended Complaint thereto are hereby dismissed.

_____
ANNE E. COVEY, Judge

22

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert M. McCord, in his official     :
capacity as the Treasurer of the       :
Commonwealth of Pennsylvania,     :
                 Plaintiff     :
                         :
           v.               :
                         :
Pennsylvanians for Union Reform,    :
and Simon Campbell, President,      :   No. 87 M.D. 2014
              Defendants    :

## O R D E R

AND NOW, this 18th day of March, 2016, the motion of Robert M. McCord, in his official capacity as the Treasurer of the Commonwealth of Pennsylvania (State Treasurer) for partial judgment on the pleadings is denied. The State Treasurer's injunctive relief claim is dismissed. Litigation will proceed in accordance with this opinion.

 

                               _____

                               ANNE E. COVEY, Judge